IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BARBARA KENNEDY,                )
                                )
              Plaintiff         )
                                )
vs.                             )   CASE NO. CV98-HGD-0195-S
                                )
WEISER SECURITY, INC.,          )
                                )
              Defendant         )

APR 16 1999

## MEMORANDUM OPINION

This matter has come before the undersigned magistrate judge as the result of a Motion for Summary Judgment filed by defendant, Weiser Security, Inc. [Doc. #10]. In a complaint filed January 28, 1998 [Doc. #1], the plaintiff, Barbara Kennedy, alleges a violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* (FMLA). The court's ruling and basis therefor are outlined below.

### BACKGROUND

Weiser Security, Inc. (Weiser) provides security guards and related services for businesses and governmental agencies. Plaintiff, Barbara Kennedy (Kennedy), was employed by the defendant from December 4, 1989, until on or about October 1, 1997. Initially employed as a security guard, Kennedy was promoted to the position of field supervisor in March 1996.

On August 22, 1997, plaintiff requested and was granted medical leave from her employer for surgery which was performed on September 9, 1997. Kennedy was cleared by her physician to

return to work on September 22, 1997. On October 1, 1997, she met with Weiser management personnel who told her that her supervisor's position was no longer available. Weiser offered Kennedy a position as a (non-supervisory) security guard at a landfill. This job paid $2.00 per hour less than the field supervisor's position and did not provide any of the health or life insurance benefits of her previous position. She subsequently declined this offer.

Plaintiff asserts that Weiser constructively terminated her employment and did not return her to her former position or an equivalent position with similar pay and benefits, in violation of 29 U.S.C. § 2614(a)(1) of the FMLA. Defendant admits that plaintiff is covered by the FMLA but denies that it violated the Act. Weiser asserts that it failed to restore plaintiff to her former supervisory position because of her poor job performance and because she was a "key employee," as that term is used in the FMLA, whose replacement was necessary to prevent substantial and grievous injury to defendant's operations.

## DISCUSSION

Different courts have utilized two different methods to determine whether to grant a motion for summary judgment in lawsuits alleging violations of the FMLA. Both are outlined and discussed below.

In *Peters v. Community Action Committee, Inc.*, 977 F.Supp. 1428 (M.D.Ala. 1997), the court set out the basic parameters of the FMLA:

> The FMLA provides for two types of broad protections to employees. The first protections, found in 29 U.S.C.A. §§ 2612 and 2614, confer new and affirmative entitlements and thus are essentially prescriptive. Subsection (a)(1) of § 2612 provides, in part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during

2

any 12-month period for one or more of the following: (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter[;] (B) Because of the placement of a son or daughter with the employee for adoption or foster care[;] (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition[; or] (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." Subsection (a)(1) of § 2614 further provides, in part, that "any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave--(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

This restoration right is subject to a number of limitations under the FMLA, including the following limitations in subsection (a)(3) of § 2614: A restored employee is not entitled to "(A) the accrual of any seniority or employment benefits during any period of leave; or (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." Subject to these and other limitations, therefore, a restored employee "does not step back on the [employee benefit] escalator at the point [s]he stepped off." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). Rather, she "steps back on at the precise point [s]he would have occupied had [s]he kept h[er] position continuously." *Id.*

The second FMLA protections, found in § 29 U.S.C.A. 2615, bar certain discriminatory conduct and thus are essentially proscriptive. Subsections (a) and (b) of § 2615 provide, in part, that it shall be unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter," or "to discharge or in any other manner discriminate against any individual because such individual . . . has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter." (Footnote omitted).

3

> These two types of FMLA protections are not mutually exclusive, however, for, not only do the proscriptive provisions bar discriminatory treatment, they also bar failure to comply with the prescriptive provisions.
>
> The relief available under the FMLA for violation of these prescriptive and proscriptive provisions includes lost wages and other benefits, actual damages, and liquidated damages. § 29 U.S.C.A. 2617(a)(1). A federal court's authority to enforce these provisions is found in § 29 U.S.C.A. 2617(a)(2), which provides that, "An action to recover the damages or equitable relief . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of--(A) the employees; or (B) the employees and other employees similarly situated."

*Id.* at 1432-33.

The differing methods of analyzing FMLA claims have developed from differing viewpoints on the relevance of the employer's intent in determining whether it has violated the proscription of § 2614(a)(1) of the Act. In attempting to determine which method is appropriate, the court in *Peters*, *supra*, observed:

> To the extent that the sole question presented by the parties in an FMLA case is whether an employee has received her entitlements under the FMLA--for example, a 12-week leave or reinstatement--the employer's intent may be immaterial. In other words, because the issue is the right to an entitlement, the employee is due the benefit if the underlying requirements are satisfied, regardless as to the intent of the employer.
>
> However, once one of the parties raises the issue of whether a right, benefit, or position is one to which the employee would have been entitled had the employee not taken the leave or whether the employer has taken adverse action against the employee for having exercised an FMLA right, the question of intent may become relevant. In the former instance, the employer's intent may be descriptive of whether a right, benefit, or position would have been conferred had the employee not taken leave under the FMLA; in the latter instance, the employer's intent would be indicative of whether

4

> its conduct was motivated by retaliation or discrimination that is
> impermissible under the FMLA.

*Id.* at 1432-33. This reasoning is sound. As will be illustrated below, under either method of analysis intent is relevant. In one instance, it is relevant to show whether the FMLA has been violated and, in the other, it is relevant to the existence of a statutory defense to its violation. The two methods of analysis are known as the "McDonnell Douglas" test and the "Strict Liability," or the "Direct" test. The level of proof required to establish a sufficient basis by an employer for summary judgment is higher under the latter method. In the absence of direction from the Eleventh Circuit Court of Appeals on the test to be applied in this circuit, the evidence presented in regard to this motion will be analyzed using both methods.

### McDonnell Douglas Test

When, as here, a plaintiff's evidence is based upon circumstantial evidence of an employer's alleged discriminatory intent, a large number of courts have decided that the analytical framework for deciding FMLA cases should be the same as that employed in Title VII actions. *See, e.g., Dollar v. Shoney's, Inc.*, 981 F.Supp. 1417, 1419 (N.D.Ala. 1997); *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997); *Munizza v. State Farm Mutual Automobile Insurance Company*, 103 F.3d 139 (Table) (No. 95-35794, 1996 WL 711563) (9th Cir. Dec. 5, 1996); *Peters v. Community Action Committee, Inc., supra*; *Beal v. Rubbermaid Commercial Products, Inc.*, 972 F.Supp. 1216, 1229 (S.D.Iowa 1997); *Dillon v. Carlton*, 977 F.Supp. 1155, 1158 n. 8 (M.D.Fla. 1997); *Dumoulin v. Formica*, 968 F.Supp. 68, 71 (N.D.N.Y. 1997); *Sidaris v. Runyon*, 967 F.Supp. 1260, 1271

(M.D.Ala. 1997); *Petsche v. Home Federal Savings Bank, Northern Ohio*, 952 F.Supp. 536, 537 (N.D.Ohio 1997).

Under this method of analysis, an employee claiming an FMLA violation by his employer has the initial burden of establishing by a preponderance of the evidence a *prima facie* case, which, if established, raises a presumption that the employer is liable to the employee under the FMLA. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under this approach, known as the *McDonnell Douglas* approach, the burden of production then shifts to the defendant to rebut the presumption of intentional discrimination thus created by articulating a legitimate, nondiscriminatory and nonretaliatory reason for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendant's stated reasons merely are pretexts for unlawful, discriminatory motives. *Id.*

### Strict Liability or Direct Test

However, this is not the only method of analyzing FMLA claims which involve a failure by an employer to reinstate an employee returning from FMLA leave. Some courts have stated that, when the FMLA action involves an employer's failure to reinstate, the appropriate method of evaluating whether the plaintiff has established a case sufficient to withstand summary judgment is by using the "strict liability" or "direct" test. *See Diaz v. Ft. Wayne Foundry*, 131 F.3d 711, 712 (7th Cir. 1997); *Cross v. Southwest Recreational Industries, Inc.*, 17 F.Supp.2d 1362 (N.D.Ga. 1998).

6

In *Cross*, the court was of the opinion that the intent of the employer is irrelevant when there is a violation of 29 U.S.C. § 2615(a)(1). It stated:

> The types of claims that may be brought under the FMLA can be divided into two categories. First, an employee can bring claims that an employer retaliated or discriminated against her because she used her FMLA leave under § 2615(a)(2). Second, an employee can assert claims that the employer refused to provide a FMLA benefit to which the employee was entitled under § 2615(a)(1). Section 2615(a)(2) claims, by definition, require that the employee prove that the employer acted with discriminatory or retaliatory intent. Section 2615(a)(1) claims, on the other hand, do not require that an employee prove that the employer acted with any particular intent--a mere showing that the employee was entitled to the benefit and the employer refused to provide it suffices to establish liability under the FMLA.
>
> The FMLA thus imposes strict liability upon employers who deny a FMLA entitlement to a qualified employee. § 29 U.S.C.A. 2615(a)(1); *Kaylor v. Fannin Regional Hosp., Inc.*, 946 F.Supp. 988, 997 (N.D.Ga. 1996) (opining that the FMLA creates strict liability for denial of statutory rights). FMLA's plain language dictates that employers must provide certain benefits. *See* § 2612(a)(1) ("an eligible employee shall be entitled to a total of 12 workweeks of leave"); § 2614(a)(1) ("any eligible employee who takes leave under section 2612 . . . shall be entitled [to reinstatement to the same or an equivalent position]"). Furthermore, Congress used the words "shall be unlawful for an employer to [deny an employee's rights under the FMLA]" rather than the words "may be unlawful [to deny an employee's rights under the FMLA]," which indicates that Congress intended to hold employers strictly liable for denying FMLA provided rights to employees. § 2615(a)(1); *Kaylor*, 946 F.Supp. at 997 (N.D.Ga. 1996) (deducing that Congress used words "shall be unlawful" in § 2615(a)(1) in order to create strict liability for denial of statutory rights); *see also Escondido Mut. Water Co. v. La Jolla Indians*, 466 U.S. 765, 772, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984) (interpreting word "shall" to mean mandatory). Congress also omitted any language referring to the employer's intent with respect to violating § 2615(a)(1), providing further evidence that the employer's intent is irrelevant to an inquiry about whether the employer violated the FMLA. *Compare* Title VII, §42 U.S.C.A. 2000e-2 (stating that an employment practice is unlawful only if the

7

employer discriminates against an individual because of the individual's race, color, religion, sex, or national origin), *with* § 2615(a)(1) (omitting any reference to employer's intent).

Additionally, when read as a whole, the FMLA indicates that Congress intended to hold employers strictly liable for denying rights provided by the FMLA. *See King v. St. Vincent's Hospital*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (directing courts to read statutes as a whole); *Kaylor*, 946 F.Supp. at 996 (reading the FMLA as a whole and concluding that strict liability standard applies to § 2615(a)(1)). For instance, Congress made provisions for employers who unintentionally violate the FMLA, permitting such "good faith" violators to be liable only for actual damages. § 29 U.S.C.A. 2617.

Finally, the FMLA's legislative history further supports the conclusion that the FMLA imposes strict liability upon an employer who denies a FMLA entitlement to a qualified employee. *Kaylor*, 946 F.Supp. at 996. Congress enacted the FMLA as a successor to the federal labor laws that establish minimum standards for employment. "The [FMLA] is based upon the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards of employment." S.Rep. No. 103-3, at 6 (1993), *reprinted in* 1993 U.S.C.C.A.N. 7. Just as an employer's intent is irrelevant with respect to its failure to meet the minimum standards imposed by these federal labor laws, an employer's intent is irrelevant with respect to failing to meet the minimum standards imposed by the FMLA. *See* Mark Rothstein, et al., *Employment Law*, § 4 (West 1994) (describing how employers may be civilly liable for unintentionally violating federal labor laws).

Because the FMLA imposes strict liability upon an employer who denies FMLA benefits to a qualified employee, a plaintiff pursuing such a claim need only prove that the employer violated the statute and need not prove that the employer did so with any particular intent. *Kaylor*, 946 F.Supp. at 997; § 2615(a)(1). Courts therefore are not required to apply the traditional employment discrimination law analytical frameworks announced in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (direct evidence cases), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67

8

L.Ed.2d 207 (1981) (circumstantial evidence cases). Indeed, in order to succeed on a claim that an employer denied a FMLA benefit under § 2615(a)(1), a plaintiff simply must prove that she was entitled to the benefit under the statute and the employer denied the benefit.

17 F.Supp.2d at 1368-69.

However, this does not mean that the employer is left without a defense under this type of analysis, even though the employee establishes that the employer refused to reinstate him or her. The court in *Cross* further noted:

> The Court observes, however, that the FMLA provides employers with potential defenses to § 2615(a)(1) claims. For instance, the FMLA imposes limitations on an employee's right to be reinstated after the employee completes her FMLA leave. § 2614(a)(3). Notably, an employee entitled to reinstatement is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." § 2614(a)(3)(B). The United States Department of Labor interprets this section as permitting an employer to deny reinstatement to an employee when the employer can prove that the employer would have laid the employee off even if the employee had not taken leave. § 29 C.F.R. 825.216(a) (1997). This is known as the "position-elimination defense." *See* Victoria Riede, Comment, *Employer Discrimination on the Basis of Pregnancy: Righting the Power Imbalance*, 27 Golden Gate U.L.Rev. 223, 240 (1997) (describing position-elimination defense).
>
> The Court believes that because the FMLA text and the United States Department of Labor regulations place the burden upon the employer to prove this defense, the employer's burden includes both the burden of production and the burden of persuasion. In a *McDonnell Douglas* analysis, on the other hand, the employer only has the burden of production with respect to a showing a legitimate nondiscriminatory reason to justify its actions. The employer's burden in asserting a position-elimination defense is thus much greater than an employer's burden in the McDonnell Douglas analysis because the employer has both the burden of production and persuasion with respect to showing that it would have eliminated the position even if the employee had not taken FMLA leave.

9

> The Court observes that placing the burden of production and persuasion on the employer with respect to affirmative defenses is not unique in the context of employment law. For instance, in the context of the National Labor Relations Act, § 29 U.S.C.A. 160(c), the burden of persuasion frequently is placed upon employers to prove affirmative defenses. *E.g. Maher Terminals, Inc. v. Director, Office Workers Comp.*, 992 F.2d 1277, 1282-84 (3d Cir. 1993) (discussing placing burden of persuasion upon employers with respect to affirmative defenses under NLRA). Perhaps even more analogous, under both Title VII and the Equal Pay Act, an employer is prohibited from paying women less than men for performing the same work. § 29 U.S.C.A. 206(d); § 42 U.S.C.A. 2000e(2); *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 875 (1982). Once an employee proves that she was paid less than her male counterparts for performing the same work, she has established a prima facie case under both the Equal Pay Act and Title VII. *Kouba*, 691 F.2d at 875. The employer then has the burden of persuasion to prove that the difference in pay is due to a "factor other than sex." *Id.* Similarly, the burden of persuasion belongs upon the employer with respect to proving an affirmative defense under the FMLA.

17 F.Supp.2d at 1369-70.

Thus, under the *McDonnell Douglas* method of analysis, once the plaintiff has made a *prima facie* showing of a violation of the FMLA, the defendant must produce a legitimate, non-discriminatory reason for its refusal to reinstate the employee, the production of which then requires the employee to prove that the stated reason is pretextual. Under the other, strict-liability method of analysis, once the *prima facie* showing is made by the plaintiff, the employer has the burden of producing evidence sufficient to persuade a court or jury that there was a valid, affirmative statutory defense to its action in refusing reinstatement.

10

## Application of Tests to Facts

Weiser has conceded, for the purpose of determining the summary judgment motion, that plaintiff has established a *prima facie* violation of the FMLA. (Brief of Defendant at 10). It asserts, however, that its actions were justified because plaintiff's performance was so poor that it had made a decision to terminate her even before she took FMLA leave. They also assert that she was a "key employee" who is not entitled to the protection afforded by the FMLA.

Title 29 U.S.C. § 2614(a)(3)(B) states: "Nothing in this section shall be construed to entitle any restored employee to— (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." In 29 C.F.R. § 825.216, the Department of Labor has given the following examples of situations where this defense is applicable:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example:
> 
> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.
> 
> (2) If a shift has been eliminated, or overtime has been decreased, an employee would not be entitled to return to work that shift or the original overtime hours upon restoration. However, if a position on, for example, a night shift has been filled by another employee, the employee is entitled to return to the same shift on which employed before taking FMLA leave.

11

> (b) If an employee was hired for a specific term or only to perform work on a discrete project, the employer has no obligation to restore the employee if the employment term or project is over and the employer would not otherwise have continued to employ the employee. On the other hand, if an employee was hired to perform work on a contract, and after that contract period the contract was awarded to another contractor, the successor contractor may be required to restore the employee if it is a successor employer. See § 825.107.
> (c) In addition to the circumstances explained above, an employer may deny job restoration to salaried eligible employees ("key employees," as defined in paragraph (c) of § 825.217) if such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer; or may delay restoration to an employee who fails to provide a fitness for duty certificate to return to work under the conditions described in § 825.310.
> (d) If the employee has been on a workers' compensation absence during which FMLA leave has been taken concurrently, and after 12 weeks of FMLA leave the employee is unable to return to work, the employee no longer has the protections of FMLA and must look to the workers' compensation statute or ADA for any relief or protections.

The examples given above are not all-inclusive of the occasions when an employer is justified in refusing to reinstate an employee after FMLA leave. Starting with this regulation, it does not take a great leap in logic to conclude that if the employer would have terminated the employee for a valid, nondiscriminatory reason, such as poor job performance, had the employee not taken FMLA leave, then, under § 2614(a)(3)(B), the employer can refuse to reinstate the employee upon his or her return to work after taking FMLA leave. There is no right to reinstatement that accrues simply because an employee takes FMLA leave when the employee otherwise would have been terminated for poor job performance had he or she not taken the FMLA leave. *See, e.g., Bocalbos v. National Western Life Insurance Co.*, 162 F.3d 379, 384 (5th Cir. 1998); *Hubbard v. Blue Cross Blue Shield Ass'n*, 1 F.Supp.2d 867 (N.D.Ill. 1998).

12

Under the *McDonnell Douglas* analysis, the production of the nondiscriminatory reason of poor job performance would be enough to negate intent and to shift the burden to the plaintiff to show that this reason is pretextual. Under the strict liability approach of *Diaz*, *supra*, and *Cross*, *supra*, the defendant must produce evidence of this reason sufficient to persuade the court or factfinder that this was the reason plaintiff was not rehired. This burden of both production and persuasion is a higher standard than the mere production of a non-discriminatory reason required under the *McDonnell Douglas* analysis. A review of the facts of this case and the supporting documentation reflects that the defendant is entitled to summary judgment under either means of analysis.

It is undisputed that a Weiser client, the City of Birmingham, complained by letter dated November 4, 1996, that plaintiff had arrived two hours late for a security job at Spain Park and had failed to make her appointed rounds during her shift. (Defendant's Exhibit B). On May 1, 1997, plaintiff was reprimanded in writing by Weiser's Branch Manager for the Birmingham office for poor job performance, including failure to fill vacant posts, unreliability, tardiness, failure to follow instructions and insubordination. She was warned that her failure to correct her attitude and performance would result in her termination. (Defendant's Exhibits D & O).

Weiser also received complaints about plaintiff's performance and conduct as a field supervisor from at least three clients. Tina Crutcher of Speedway Oil Co. complained that, on several occasions, posts had been vacant and that plaintiff had claimed that a guard was on the way but no one ever showed up. (Defendant's Exhibit E). Jim Speed of Monte D'Oro Apartments also complained that plaintiff was impossible to contact on weekends, would not return his calls, and lied to him about sending replacement guards to relieve guards on duty. Speed advised Birmingham

13

Branch Manager Sue Pearson that Kennedy was banned by Speed from Monte D'Oro. (Defendant's Exhibit A). On another occasion, plaintiff was instructed by Weiser's Operations Manager to fill a post as a security guard until a relief guard could be located. Though she is reported to have stated that she was on her way, plaintiff did not arrive until four hours later. The next day the client, Ogihara American, canceled its contract with Weiser. (Defendant's Exhibit H). It also was alleged that on August 18, 1997, plaintiff falsified documents to make it appear that she had trained a new employee on his first day on the job (August 16) when, in fact, she did not do so until the following day, after he had worked a full shift without training.

Janis Mire, Vice President for Human Resources at the Weiser home office, and Birmingham Branch Manager Sue Pearson both were made aware of these and other allegations of poor job performance and client complaints that had been lodged against the plaintiff. On August 18, 1997, Mire prepared a memorandum recommending that plaintiff be terminated.

On August 19, 1997, plaintiff was counseled by Birmingham Operations Manager Rodney Harris and received a written reprimand for tardiness on August 18, 1997, and for failure to carry out instructions regarding attendance violations. She was warned that any further such problems would result in her suspension or termination. (Defendant's Exhibit J). Thereafter, however, Branch Manager Sue Pearson made the decision to terminate plaintiff and called her into her office on August 20, 1997, for the sole purpose of doing so. Before she could do so, plaintiff handed her a notice requesting medical leave. Surprised by this and unsure of plaintiff's rights regarding medical leave, Ms. Pearson did not terminate plaintiff nor mention it at that time. (Defendant's Exhibit A). After she provided appropriate documentation, plaintiff was allowed to take medical leave. However, she was informed that she was a "key employee" and that restoration to employment may

14

be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to Weiser. (Defendant's Exhibit L).

Plaintiff admits that she was reprimanded for tardiness (Deposition of Plaintiff at 21-22), was criticized regarding her performance on the City of Birmingham job at Spain Park (*id.* at 27-30) and at Speedway (*id.* at 53), misdated the training form of a new employee such that it reflected that he received training on the day prior to when it was actually performed (*id.* at 71-76), and was criticized by a supervisor, Rodney Harris, concerning her job performance (*id.* at 46-51).

Plaintiff claims that all of these complaints were either the result of her failure to require the guards at Speedway to stock drinks, though it was not part of their job duties (*id.* at 53), or were untrue, as in the case of the Spain Park complaint by the City of Birmingham that she failed to complete her rounds (*id.* at 56-57), or were accidental or excusable under the circumstances, such as with the misdated training form. (*id.* at 71-77). Nevertheless, she does not dispute that the complaints were made or that the training form was altered. She claims only that, when explained, these alleged incidents did not amount to a sufficient basis to justify her demotion or dismissal.

Weiser's belief that plaintiff's job performance was poor clearly qualifies as a valid, nondiscriminatory reason, under the *McDonnell Douglas* analysis, for its failure to reinstate the plaintiff. Under this method of analysis, the burden now shifts to the plaintiff to show that this stated reason is pretext used to hide a violation of the FMLA. In an attempt to do so, plaintiff asserts (1) that Sue Pearson falsely stated that plaintiff's position had been filled while she was on leave, (2) that Weiser made no other job offers to plaintiff, except for the position at the landfill, (3) that Weiser had no basis for claiming that plaintiff was a key employee, and (4) that the stated disciplinary reasons for her termination did not warrant such action.

15

One problem with plaintiff's proffered evidence of pretext is that it is undisputed that Janis Mire of the Weiser home office recommended plaintiff's termination on August 18, 1997, and Sue Pearson decided to do so on August 20, 1997, before plaintiff requested FMLA leave. Furthermore, the testimony of Sue Pearson is that plaintiff's position was filled between August 20, 1997, and October 1, 1997. (Deposition of Sue Pearson at 10-11). October 1, 1997, is the date that plaintiff attempted to return to work. (See Defendant's Exhibit M). Thus, the undisputed testimony is that plaintiff's replacement was promoted to her position before plaintiff returned. The fact that he did not actually assume the position until October 6, 1997, does not contradict Ms. Pearson's testimony that he had been selected by October 1. Likewise, the fact that plaintiff was offered only a position as a security guard at the landfill does not show pretext. Given plaintiff's prior problems with clients and co-workers, Ms. Pearson's explanation of why this was the only position offered was reasonable. (Deposition of Sue Pearson at 40).

Weiser's contention that plaintiff is a "key employee" also fails to show pretext. Plaintiff's assertions to the contrary, it is clear from the record that plaintiff was "a salaried eligible employee who is among the highest paid 10% of the employees employed by the employer within seventy-five (75) miles of the facility in which the employee is employed." 29 U.S.C. § 2614(b)(1). Likewise, Weiser makes a plausible argument that denial of restoration of plaintiff to her supervisory position was "necessary to prevent substantial grievous economic injury to the operations of the employer." *Id.* Weiser asserts that rehiring plaintiff as a supervisor would cause it to risk losing at least three customers–the City of Birmingham, Monte D'Oro Apartments and Speedway Oil Co. Whether such a loss, if it occurred, would amount to "grievous and substantial economic injury" is, perhaps, open

16

to question; but there is a basis for making this argument found within the evidence presented by the defendant. Therefore, this assertion does not reflect pretext on the part of Weiser.

Finally, plaintiff asserts that Weiser failed to follow its own disciplinary policy when it terminated her and that this also is evidence of pretext. However, plaintiff has failed to point out what part of the policy the defendant failed to follow, other than to assert the policy requires that the personnel file be documented and that this "was largely not done." A review of the record in this case reflects otherwise. There were numerous citations of policy violations, including two written reprimands, within the four months immediately preceding plaintiff's FMLA leave. The fact that Ms. Kennedy did not believe that some of the complaints were factually correct or that she had done anything to warrant this discipline is irrelevant. The pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs. *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (holding that when employer produces negative performance reviews, employee's assertion of his own good performance is insufficient to defeat summary judgment). Thus, this evidence also falls far short of reflecting that the stated basis for Weiser's failure to reinstate plaintiff was pretextual.

The facts cited above are undisputed by any substantial evidence offered by the plaintiff. Thus, not only has the defendant provided a valid, non-discriminatory reason for its actions under a *McDonnell Douglas* analysis, it has, by this same evidence, made a showing and carried its burden of persuasion that the job of field supervisor was not a position to which the plaintiff would have been entitled had she not taken the FMLA leave. Therefore, the defendant also has met the burden of proof required under the "direct" test of *Diaz* and *Cross*, *supra*. The result is that, under either

17

analysis, there remains no genuine issue of material fact to be determined and defendant is entitled to a summary judgment as a matter of law.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 16th day of April, 1999.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

18